IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TITLEMAX OF SOUTH CAROLINA, INC., | ) ) ) | Case No.: 4:20-cv-02938-JD-TER |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| JESSICA RENEE CROWLEY, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on TitleMax of South Carolina, Inc.'s ("Plaintiff" or "TitleMax") Motion for Preliminary Injunction pursuant to Rule 65(a) Fed. R. Civ. P. TitleMax seeks an Order enjoining Jessica Renee Crowley ("Defendant") "from: (1) further contact with Plaintiff's customers to encourage withdrawing, curtailing or cancelling their business with Plaintiff; (2) further use or disclosure of Plaintiff's Confidential Information and Trade Secrets; (3) making any disparaging or defamatory statements regarding Plaintiff; and (4) otherwise breaching or violating the Confidentiality Agreement or Covenants Agreement." (DE 5-2, p.1.) Defendant, proceeding *Pro Se*, did not filed a response to the motion.[1] For the reasons set forth herein, Plaintiff's Motion for a Preliminary Injunction is granted.

## BACKGROUND

This matter arises out of, *inter alia*, a breach of contract dispute filed by TitleMax. (DE 1.) TitleMax is a South Carolina regulated lender that offers loans at retail locations throughout South Carolina. (DE 5-2, p. 1.) Defendant is a former employee hired as the Store Manager of its

---

[1] Because Defendant did not file a response to this motion, this Court will rely on Defendant's answer to the complaint in addressing this motion.

1

Cheraw, South Carolina, location in 2016. (DE 5-2, p. 1.) TitleMax alleges that on March 24, 2020, while employed by the company Defendant called one of its customers and advised them "to stop making payments to Plaintiff pursuant to existing loan agreements because the agreements are illegal and unenforceable." (DE 5-2, p. 3.) TitleMax further alleges "Defendant also encouraged the Cheraw Customer to file a lawsuit in North Carolina seeking a determination the loan agreements – executed in South Carolina and containing a South Carolina choice-of-law provision – are governed by North Carolina law." (DE 5-2, p. 3.) Moreover, TitleMax claims that Defendant "indicated [to the customer] she was in the process of contacting all Titlemax's customers and intended to shut Titlemax down." (DE 5-1, ¶ 16.) TitleMax contends one of its customers informed it that "Defendant's efforts are not limited to her; rather, Defendant has contacted other customers to encourage additional breaches of loan agreements and the customers' participation in litigation against Plaintiff in North Carolina." (DE 5-2, p. 4.)

Defendant denied these allegations in her Answer and contends she "has no desire or need to contact any Titlemax customers or try to shut Titlemax down." (DE 9, ¶ 14.) The parties entered two agreements regarding Defendant's employment with TitleMax, a Confidentiality and Non-Solicitation Agreement ("Confidentiality Agreement") and an Employment Covenants Agreement ("Covenants Agreement"). (DE 5-2, p. 1-2.) The Confidentiality Agreement gave Defendant access to current customers and customer lists and other confidential information. However, it prohibited Defendant's use of such information outside the Plaintiff's business or in any way detrimental to Plaintiff's interests. (DE 5-2 p. 2.) This prohibition applied during the term of Defendant's employment and any time thereafter. (DE 5-2, p. 2.) Furthermore, the Covenants Agreement limited Defendant's ability to use TitleMax's Confidential Information and Trade

Secrets following her separation from employment. (DE 5-2, p. 2.) Additionally, it prohibited Defendant from "disparaging or defaming Plaintiff." (DE 5-2, p. 2.)

Lastly, the agreements provided equitable remedies clauses. "The Confidentiality Agreement provides that in the event of an actual or threatened breach of any term, covenant, or provision, Plaintiff shall be entitled to injunctive relief (temporary, preliminary and permanent) against Defendant as a remedy at law would be inadequate and insufficient." (DE 5-2, p. 2.) "Similarly, the Covenants Agreement provides that a breach or threatened breach by Defendant would cause irreparable harm and that monetary damages would be both inadequate and difficult to determine." (DE 5-2, p. 2.)

## LEGAL STANDARD

Under Rule 65(a), Fed. R. Civ. P., a court may issue a preliminary injunction. A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in [the] limited circumstances which clearly demand it." Direx Israel, Ltd. v. Breakthrough Med Corp., 952 F.2d 802, 811 (4th Cir. 1991) (internal quotation marks omitted) (citation omitted). The primary purpose behind the issuance of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). A party seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). If a preliminary injunction motion is granted, the order granting it must "(A) state the reasons why

it issued; (B) state its terms specifically; and (C) describe in reasonable detail-and not by referring to the complaint or any other document-the act or acts restrained or required." Fed.R.Civ.P. 65(d).

## DISCUSSION

TitleMax's request for injunctive relief relates only to the fourth and fifth causes of action asserted in the Complaint (i.e., Breach of Confidentiality Agreement and Breach of Covenants Agreement). TitleMax is likely to succeed on the merits of these claims. Defendant does not dispute the existence or the validity of the agreements.[2] (DE 9.) Rather, Defendant claims that "I have no recollection of said phone call that occurred on March 24, 2020, [and] I have never encouraged a customer to not make monthly payments on time, [and] I have no knowledge of telling any customer to sue Titlemax." (DE 9 ¶ 3, 11, 13.) However, TitleMax has presented a Declaration of Christy Craft ("Craft") District Director of Operations for TitleMax declaring and affirming *inter alia* Defendant's alleged phone calls and conduct toward its customers. (DE 5-1, p. 1-3.) Given Defendant has failed to respond to TitleMax's motion or offer any evidence to refute Craft's Declaration, this Court finds that TitleMax is likely to succeed on the merits of its breach of agreement causes of action.

Furthermore, TitleMax is also likely to suffer irreparable harm in the absence of preliminary relief. Generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." <u>Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.</u>, 22 F.3d 546, 551 (4th Cir. 1994) "However, when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." <u>Multi-Channel TV Cable Co. v. Charlottesville Quality</u>

---

[2] When an agreement is executed at the inception of an employment relationship, continued at-will employment is sufficient consideration. <u>See</u> <u>Riedman Corp. v. Jarosh,</u> 290 S.C. 252, 253, 349 S.E.2d 404, 405 (1986).

Cable Operating Co., 22 F.3d 546, 552.  Craft declares in her Declaration among other things that the Defendant "contacted a TitleMax customer (the 'Cheraw Customer') on the customer's personal cell phone [and] recommended the Cheraw Customer breach her existing loan agreement and file a lawsuit against TitleMax."  (DE 5-1, p. 2.)  Further, the parties agreed in the Covenants Agreement that in the case of a breach or threaten to breach of the agreement, "the Company would suffer irreparable harm . . . it would be difficult to determine damages, and money damages alone would be an inadequate remedy for the injuries suffered by the Company . . . ."  (DE 5-2, p.21.)  Since TitleMax has offered evidence that creates the possibility of permanent loss of goodwill and Defendant does not challenge whether TitleMax has an adequate remedy at law, this Court finds that TitleMax is likely to suffer irreparable harm.

This Court further finds that Plaintiff has shown that the balance of equities tip in its favor, and the public interest of enforcing contracts weighs in favor of preliminary relief.  The Defendant entered agreements with TitleMax to guard against the alleged conduct to be preliminarily enjoined.  It is unlikely the Defendant will be injured if enjoined from contacting TitleMax customers to share confidential information or to encourage its customers to terminate their contracts with the company.  Accordingly, TitleMax is entitled to a preliminary injunction enjoining Defendant from: (1) further contact with its customers to encourage withdrawing, curtailing or cancelling their business with the company; (2) further use or disclosure of TitleMax's Confidential Information and Trade Secrets; and (3) making any disparaging or defamatory statements regarding TitleMax.

## CONCLUSION

For the reasons set forth above, it is ordered that Plaintiff's Motion for a Preliminary Injunction is granted as identified herein and that this injunction shall remain in effect during the pendency of this action and until a further order of this Court; and

**IT IS FURTHER ORDERED** that bond is set in the amount of One hundred ($100.00) dollars[3] and must be posted with the Clerk immediately.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
April 28, 2021

---

[3] "Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond accordingly . . . . See, e.g., International Controls Corp. v. Vesco, 490 F.2d 1334 (2d Cir.1974) (approving district court fixing bond amount at zero in the absence of evidence regarding likelihood of harm.)" Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, n 3 (4th Cir.1999). There is a minimum risk of harm to Defendant because Plaintiff only requests that Defendant follow the terms of the non-disputed agreements Plaintiff signed. Therefore, a large bond does not appear to be warranted. If necessary, the Defendant can seek an increase of the amount of the bond on a proper showing.